In the Matter of BARBARA TURNER, on Behalf of HERMAN TURNER and All Others Similarly Situated, Appellant, v FREDERICK R. KOWALSKI, as Superintendent of the Port Chester-Rye Union Free School District, et al., Respondents.—In a proceeding pursuant to CPLR article 78 *inter alia* (1) to compel respondents to provide instruction for petitioner's son and (2) for

declaratory relief, petitioner appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Westchester County, dated February 14, 1975, as dismissed the petition. Judgment modified, on the law, to the extent of deleting therefrom the second decretal paragraph and substituting therefor the following: "Petition granted to the extent of declaring that respondents' practice of not providing alternative instruction for students suspended for a period of five days or less is in violation of section 3214 of the Education Law, and the petition is otherwise dismissed." As so modified, judgment affirmed, insofar as appealed from, without costs. Section 3214 (subd 3, par e) of the Education Law provides, in pertinent part, that "where a pupil has been suspended as insubordinate or disorderly and said pupil is of compulsory attendance age, *immediate steps shall be taken* for his attendance upon instruction elsewhere or for supervision or detention of said pupil pursuant to the provisions of article seven of the family court act" (emphasis supplied). It is conceded that in situations where the suspension imposed is for a period of five days or less, and where the conduct is not such as to warrant a reference pursuant to the Family Court Act, respondents make no provision for alternative instruction. They justify their position on the ground that the language of section 3214 (subd 3, pars b, c, d) recognizes a distinction between suspensions of five days and less and those of more than five days, and contend that alternative instruction for students suspended for the shorter period is both impractical and unreasonable. We cannot agree. A review of the legislative history of subdivision 3 of section 3214 shows that the "five day dividing line" played no part in the legislative design of paragraph e (see, e.g., L 1947, ch 820, § 1; L 1969, ch 307, § 1 [and the memorandum of the State Department of Education (NY Legis Ann., 1969, p 205)]; L 1971, ch 568). On the contrary, the clear intent, as expressed in the statute, is that *all* suspended disorderly students whose conduct does not warrant corrective detention be the object of "immediate steps" to secure their "attendance upon instruction elsewhere" during their period of suspension (Education Law, § 3214, subd 3, par e; see, also, *Matter of Walton v Board of Educ. of City School Dist. of Glen Cove,* 68 Misc 2d 935, 937; *Matter of Manson,* 11 Ed Dept Rep 48, 50). Naturally, the term "immediately" does not mean "instantaneously", but it does mean that the educators should act reasonably promptly, with due regard for the nature and circumstances of the particular case (see *People v Frudenberg,* 209 NY 218, 221). Hopkins, Acting P. J., Christ, Brennan and Munder, JJ., concur; Cohalan, J., dissents and votes to affirm, with the following memorandum: An eight-year-old child was suspended from school for a period of five school days for being insubordinate. Section 3214 (subd 3, par e) of the Education Law reads, in part: "Where a pupil has been suspended as insubordinate or disorderly and said pupil is of compulsory attendance age, *immediate steps shall be taken for his attendance upon instruction elsewhere* or for supervision or detention of said pupil pursuant to the provisions of article seven of the family court act" (emphasis supplied). Upon his suspension the pupil was given sufficient homework to cover the five-day period. The appellant mother would have it that the above statute is mandatory and implies that a teacher should be detached from his regular duties in order to tutor the recalcitrant child. I disagree. If such a construction is to be given to the statute then we have retrogressed shamefully from the Biblical days, when the way of transgressors was hard, to the modern day concept that troublemakers must be coddled. In my view, the homework given the child was a form of instruction which satisfied the requirement of "instruction elsewhere". In study periods in school, for instance, no formal tutorial instruc-

tion is given to the pupils. The very word "instruction" in Webster's New International Dictionary (2d ed) is defined to be "that which instructs or is imparted in order to instruct". An example in the same dictionary showing the distinction between "instruction" and "teaching" says "instruction emphasizes the imparting of information, knowledge or skill". "Homework" is defined in that dictionary as "any assignment for study or preparation outside the classroom." The record indicates that during the school year September, 1973 through June, 1974, the year preceding the school year in question, the school district imposed 187 suspensions of five days or less. To be forced to give instruction elsewhere for that number of instances by assigning a tutor on each occasion would obviously unduly cripple the orderly operation of the school. Such a result could scarcely have been intended by the Legislature. As noted in McKinney's Consolidated Laws of New York (Book 1, Statutes, § 141): "It is a fundamental rule of statutory interpretation that of two constructions which might be placed upon an ambiguous statute one which would cause objectionable consequences is to be avoided. Stated in another way, the rule is that the construction to be adopted is the one which will not cause objectionable results, or cause inconvenience, hardship, injustice, mischief or absurdity. The Legislature is presumed to have intended that good will result from its laws, and a bad result suggests a wrong interpretation." The appellant also raises the issue of the interpretation of section 3214 (subd 3, par d) of the Education Law, which reads: "In the case of a suspension by the principal pursuant to paragraph b of this subdivision, the pupil and the person in parental relation to him shall, on request, be given an opportunity for an informal conference with the principal at which the person in parental relation shall be authorized to ask questions of complaining witnesses." The phrase "shall, on request" would mean, literally construed, that it is incumbent upon the parent to make the request. Appellant wishes to read section 3214 (subd 3, par e) of the Education Law literally and paragraph d of that subdivision liberally. She cannot both have her cake and eat it. Hence, I would affirm the result at Special Term. [80 Misc 2d 597.]