Michael Catalano, J.
Petitioners, Daisy George, Gertrude Wallace, Rachel Gibson, Lena Thornton, Willa Mae Maynard and Evelyn Brown (herein called “ petitioners; ” the other named petitioners, Mozelle Jacobs, Edward Ware, Clara Anderson and Jean Rose having withdrawn from this proceeding) seek a judgment pursuant to article 78 of the CPLR directing respondents to hold a hearing to determine whether petitioners’ children were properly expelled, suspended or dropped from the rolls of the Lackawanna Senior High School (the “ school”) and whether said children should be allowed to attend classes and participate in all school functions pending such determination, and whether their school records should note any suspension.
On the original return date, March 11, 1970, counsel demonstrated a willingness to settle their differences, so the court granted an adjournment for this purpose until March 17, 1970.
Upon the trial of the issues on said last date, it was stipulated in open court by the parties’ attorneys that all the female pupils, Mattie Thornton, Victoria Jacobs, Yvonne Ware, Dorothy Smalls and Theresa Rose, had returned to school and their records were cleared of any suspension; and that all the male pupils, Terry George, Tyrone Wallace, Tommy Gibson, Dave Thornton, Floyd Maynard and Nathaniel Smalls (the “ pupils ”) *430 have not returned to school. These pupils’ ages range from 17 to 20 years.
Petition states that on February 20, 1970, each petitioner received a letter postmarked and dated February 18,1970, from respondent, Harry J. Doherty, Principal of Lackawanna Senior High School (“Doherty”) stating: “Your son/daughter (named) has been absent for a prolonged period of time from Lackawanna High School. 'Since he is no longer of compulsory school age, we assume he has left school and we will drop him from our rolls as of February 23, 1970.” Accordingly, the pupils were “ dropped from the school rolls ” on February 23, 1970. The pupils were absent from school during the month of February, 1970 because petitioners believed that the school was unsafe, due to ‘ ‘ racial tension in said school having approximately 1,200 students of which approximately 120 are black students; that petitioners’ children are black students.” The school had racial disturbances culminating on February 2, 1970 in physical damage to the school’s cafeteria and “physical injury to more than a dozen students, precipitating great concern in the black community and causing an investigation to be made by the Justice Department of the TI. S.”
Respondents’ attorney’s affidavit states that all pupils over the compulsory school age were informed to return to the school or be dropped from the school rolls as of February 23, 1970; that the school has not refused admission to any pupil, regardless of age, and will accept any pupil who will return and comply with school regulations; that the law does not require a hearing for children over the compulsory school age of 17 years or more; that police officers are stationed in the school; that 1,200 pupils attend the school and only 40 refused to return to the school stating it was unsafe; that since February 2, 1970, no incident has arisen between black and white pupils; that petitioners’ children voluntarily refused to return to school; that no pupils that have returned to the school have been penalized in any way nor has any discipline been imposed upon them.
Article 65 of the Education Law, “ Compulsory Education and School Census, Part I — Compulsory Education ”, in section 3201, ‘ ‘ Discrimination on account of race, creed, color or national origin prohibited ”, provides, in part: “ 1. No person shall be refused admission into or be excluded from any public school in the state of New York on account of race, creed, color or national origin.” Here, no one claims such refusal or exclusion.
Ibid., section 3205, ‘ ‘ Attendance of minors upon full time day instruction ’ ’, provides, in part: “ 1. a. In each school district *431 of the state, each minor from six to sixteen years of age shall attend upon full time instruction. ’ ’
Section 2 of the Education Law, “ Definitions ”, provides, in part: ‘ ‘ "Wherever used in this chapter, the following terms shall have the respective meanings hereinafter set forth or indicated: “ Compulsory school ages. The term 1 child of compulsory school age ’ means any child between seven and sixteen years of age lawfully required to attend upon instruction.”
Here, the pupils are 17 to 20 years of age; they are not such “ minors.”
Section 3214 of the Education Law, “ School for delinquents ”, provides, in part: “ 1. School delinquent. A minor under seventeen years of age, required by any of the provisions of part one of this article to attend upon instruction, who is an habitual truant from such instruction or is irregular in such attendance or insubordinate or disorderly during such attendance, is a school delinquent.”
Ibid., “6. Suspension of a minor * * * c. No pupil may be suspended for a period in excess of five school days unless such pupil and the person in parental relation to such pupil shall have had an opportunity for a fair hearing, upon reasonable notice, at which such pupil shall have the right of representation by counsel, with the right to question witnesses against such pupil.” (Added by L. 1969, ch. 307.)
The word ‘ ‘ pupil ’ ’ as used in said subdivision 6 means a person of any age attending 'School. For instance, section 3215 of the Education Law refers to: “ minor under the age of eighteen years,” (subd. 1); “minor fourteen years of age or over,” (subd. 4, par. a); “ minor fourteen or fifteen years of age,” (subd. 4, par. a, subpar. [3]); “minor sixteen years of age or over,” (subd. 4, par. a, subpar. [4]) etc. Generally, “ a minor is a person under the age of twenty-one years. A minor reaches majority at that age.” (Domestic Relations Law, § 2.)
A person 17 years of age, or older, has the right to “ drop out ” of public school, if he so elects. This is not a “ suspension ’ ’ within the meaning of subdivision 6 of section 3214 of the Education Law. Suspension means “ a suspending or being suspended; specifically, (a) a barring from office, etc.” (Webster’s New 20th Cent. Dict., 2d ed., 1964.)
Here, the pupils, all males 17 to 20 years of age, have voluntarily remained away from school for the entire month of February and half of March, 1970. Two sisters of two of them have returned to school. The pupils have nothing to fear at the school if they behave themselves, because police are there to protect them, if they should need protection. These pupils have *432 not been suspended, only dropped from the rolls. The distinction is vital.
An article 78 proceeding may be brought to direct school authorities to grant a pupil a hearing where he is suspended from school contrary to a statutory mandate. (See Matter of Crispell v. Rust, 149 Misc. 464, 467; Howard v. Clark, 59 Misc 2d 327, 328.)
The court granted an order upon stipulation of counsel in open court allowing the pupils to attend classes and participate in all school functions, if they should so elect.
The court finds that the pupils were properly dropped from the rolls of the school.
Therefore, the petition is dismissed, without costs.